# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **Jeff Hood**, | § § § | |
| Plaintiff, | § § | Civil Case No. |
| vs. | § § | **CONNECTED TO A** |
| | § | **CAPITAL CASE** |
| **JOHN Q. HAMM**, in his official capacity as Commissioner, Alabama Department of Corrections, and | § § § § | **EXECUTION DATE: JANUARY 25, 2024** |
| **TERRY RAYBON**, in his official capacity as Warden, Holman Correctional Facility, | § § § § | |
| Defendants. | § | |

## COMPLAINT UNDER 42 U.S.C. § 1983 TO ALLOW SPIRITUAL ADVISOR TO EXERCISE STATUTORY RIGHTS TO MINISTER TO CONDEMNED PRISONER KENNETH EUGENE SMITH

1

## INTRODUCTION

1. Plaintiff Jeff Hood ("Dr. Hood") is a priest with the Old Catholic Church and acts as a spiritual advisor to death-row prisoners in Alabama, Texas, Oklahoma, Tennessee, Florida, and Mississippi. He has been approved by the prison systems and been present for numerous executions.

2. Prisoner Kenneth Eugene Smith is imprisoned at Holman Correctional Facility, located in Atmore, Alabama awaiting execution. Smith is scheduled to be executed on January 25, 2024. He has already been the victim of a botched execution by the State of Alabama in November of 2022, when it could not find a vein to execute him by lethal injection.

3. Dr. Hood ministers to Mr. Smith and has a close priest-penitent relationship with Mr. Smith.

4. Mr. Smith elected to designate Dr. Hood as his spiritual advisor. The proper forms were filled out in full and signed in accordance with Alabama law.

5. Dr. Hood has undertaken the necessary steps to be present with Mr. Smith in the execution chamber. This request has been granted. No one, however, has been able to guarantee the safety of the spiritual advisor with this never tested use of a deadly gas in a confined space. He has a right to minister to his parishioner during the direst time of his life. This cannot be done from three feet away demanded in the Acknowledgement of Spiritual Advisor

form that Dr. Hood was forced to sign. The Defendants have further denied Plaintiff his First Amendment rights to free exercise of religion by creating vagueness within the Acknowledgement of Spiritual Advisor form that seems to even forbid or greatly inhibit him from touching Mr. Smith during the execution.

## JURISDICTION

6. The Court has jurisdiction under 42 U.S.C. §§ 4200cc-1, 28 U.S.C. §§ 1343, 1651, 2201, and 2202, and 42 U.S.C. § 1983.

## VENUE

7. Venue lies in the Middle District under 28 U.S.C. § 1391 because Defendant Hamm has his office in Montgomery, Alabama.

## PARTIES

8. Plaintiff Jeff Hood is the spiritual advisor to prisoner Kenneth Eugene Smith. Mr. Smith is being imprisoned in the Holman Correctional Facility under a sentence of death. Dr. Hood will be present in the execution chamber if the State of Alabama executes Mr. Smith on January 25, 2024. Plaintiff is represented by Eric Allen, 4200 Regent, Suite 200, Columbus, Ohio 43219 and Gregory W. Gardner, P.O. Bo 2366, Boulder, Colorado 80306.

9. Defendant John Q. Hamm is the Commissioner of the Alabama Department of Corrections. The Alabama Department of Corrections is located at 301 South Ripley Street, Montgomery, Alabama 36130. Mr. Hamm ultimately is responsible for the rules and regulations preventing Plaintiff Dr. Hood from performing his spiritual-advisor duties as discussed in United States Supreme Court decisions. Defendant is represented in these proceedings by Steve Marshall, 501 Washington, Montgomery, Alabama, 36104.

10. Defendant Terry Raybon is the Warden of Holman Correctional Facility. Mr. Smith is imprisoned there. Furthermore, Plaintiff Dr. Hood will perform his spiritual-advisor duties for Mr. Smith at that facility if Mr. Smith is executed. Defendant is represented in these proceedings by Steve Marshall, 501 Washington, Montgomery, Alabama, 36104.

## FACTS

11. Alabama State Senator Trip Pittman sponsored Senate Bill 272 which allowed for execution by means of nitrogen hypoxia if lethal injection is not available. The law was in response, according to Senator Pittman, to the scarcity of lethal injection compounds. It passed the House by a vote of 75 to 23 and the Senate 29 to 0. There was minuscule debate on the floor of the legislature. There was, however, no debate regarding the safety to others if nitrogen were to escape or how this Bill would affect the religious rights of

the condemned and their spiritual advisors. It was signed into law by Governor Kay Ivey later in 2018.

12. In August of 2023, the ADOC modified its execution protocol to add nitrogen hypoxia to lethal injection and electrocution as means of execution in the state of Alabama. This form of execution has the possibility to be dangerous not only to Defendants' employees but to Plaintiff as well.

12. Nitrogen hypoxia causes the death of the condemned by placing a mask that is an airtight fit over the inmate's face. The executioner will then have his air supply substituted with nitrogen causing his heart to stop. During debate, State Senator Pittman stated, ironically, that nitrogen has been shown to kill people in workplace accidents and suicides.

13. The United States Safety and Hazard Investigation Board found 85 individuals died between 1992 and 2002 in nitrogen-related accidents. It found that most workplace accidents occurred in confined spaces. Confined spaces like a cramped execution chamber in Holman. In these accidents, workers died because of the unstable, odorless nature of nitrogen. The Board suggested best practices for the use and handling of nitrogen. This includes the continuous forced draft ventilation with fresh air during the entirety of the job, ensuring that ventilation systems are kept up and the use of warning systems. Having based this system and its viability on workplace accidents,

they have not followed the recommendations to have a ventilated space to ensure the safety of the workers and the spiritual advisor. OSHA requires a permit if such dangerous gas is used in a confined space. OSHA 1910.146. OSHA has determined there have been 14 nitrogen asphyxiation accidents between 2012 and 2020. In January 2021, six peopled died in a workplace accident from exposure to nitrogen in Gainesville, Georgia. No such precautions suggested by OSHA or the U.S. Chemical Safey and Hazard Investigation Board are presently in place in the execution protocol.

14. Plaintiff has agreed to Mr. Smith's request to be his spiritual advisor during his execution and was quickly granted the ability by the Defendants to function as such. Plaintiff served as spiritual advisor during the execution of Casey McWhorter on November 16. The stipulations offered by the Defendants within the Acknowledgement of Spiritual Advisor form are filled with such vagueness that he is being asked to stay at least three feet from Mr. Smith and cannot lay hands upon him during the execution. In addition to prohibiting touching of Mr. Smith's head even though he anointed Casey McWhorter's head with oil in the last execution, these requirements also seem to include, at least in parts the touching of his feet, leg, or arm. Parts of the body that do not explicitly meet the mask or the tube that feeds the nitrogen into the mask but could be construed to be less than

three feet away from both leaner and wider interpretations of the "nitrogen hypoxia system." It is our estimation that they are using vagueness to force Plaintiff to stay more than three feet from Mr. Smith during the execution through various stipulations within the Acknowledgement of Spiritual Advisor.

15. The Defendants claim that they have made the chamber safe for the spiritual advisor and any ADOC employees by placing oxygen sensors on the wall of the execution chamber during the execution. The protocol states that these must be tested in the days leading up to the execution. However, how these vital sensors are tested has been redacted from the protocol. Further, the brand and model of these sensors is not shared as part of the protocol. The protocol also does not provide for constant ventilation in the area or any training for the spiritual advisor or other non-employee visitors to the execution chamber.

16. The Defendants have determined that a three foot "safe area" around the condemned during the execution will be adequate should gas escape from tube blowing nitrogen into the mask. This "safe area" also prohibits a spiritual advisor from touching the condemned. However, there is no scientific basis nor was evidence taken during the passage of this legislation or producing the protocol that indicates this "safe area" would make anyone

safe. Given that nitrogen does not warn of its presence and that it is ambient and can move anywhere in the room, it is unlikely it would stay within the safe area.

17. This protocol requires the use of a mask. This mask must have an airtight seal to avoid the release of nitrogen in a confined area. The use of monitors around the mask is arbitrary and not based on any scientific method of protection.

18. The Acknowledgement of Spiritual Advisor form given to the spiritual advisor gives generic facts regarding the inhalation of nitrogen. It provides no guidance regarding nitrogen inhalation and asphyxiation. If the Acknowledgement of Spiritual Advisor form does not explicitly prohibit touching, it at the very least is intended to secure a waiver of touching the condemned.

19. There is nothing in the protocol or the spiritual-advisor warning that provides for any defect in the protocol or process as defined by Defendants.

## CLAIMS FOR RELIEF

20. Plaintiff incorporates by reference and re-alleges the allegations contained in the previous paragraphs of this Complaint.

**CLAIM ONE: FIRST AMENDMENT FREE EXERCISE OF RELIGON**

21. The First Amendment to the United States Constitution requires states "make no law…prohibiting the free exercise of religion." U.S. Constitution Amend I. See a *See also Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940) (holding that the Free Exercise Clause is applied to the States through the Fourteenth Amendment to the United States Constitution).

22. Mr. Smith is scheduled to be executed on Thursday, January 25, 2024. According to the United States Supreme Court, Mr. Smith is entitled to a spiritual advisor with him in the execution chamber. *E.g.*, *Dunn v. Smith*, 141 S. Ct. 175, 175 (2021). The Defendants have allowed that request but have forbidden him from having contact with the condemned during the execution. While prison security is a valid concern, Defendants must connect their actions related to spiritual advisors to that security. *Ibid*. This has not occurred. One must remember that the United States Supreme Court has allowed touching of prisoners during execution. *Ramirez v. Collier*, 595 U.S. __, __, 142 S. Ct. 1264, 1284 (2022). The Court allowed the spiritual advisor to touch Ramirez while praying over him.

23 When State actors hinder a person's ability to practice his religion, courts first must determine if the action is neutral and applicable. *Church of the Lukumi Balbao Aye, Inc. v. Hialeah*, 508 U.S. 520, 531 (1993).

24. If it is neutral and applicable, the State action can have an "incidental effect of burdening a particular religious practice." *Ibid*.

25. If the State action is not neutral and applicable, it must survive strict scrutiny. Governments survive strict scrutiny when they show a "compelling governmental interest" that is "narrowly tailored to advance that interest." *Ibid*.

26. Here, the ADOC's actions are not neutral. They are hostile toward religion. Indeed, they deny a prisoner his chosen spiritual advisor's touch at the most critical juncture of his life: his death. Because it is not neutral, the ADOC's actions must survive strict scrutiny. They cannot. The government's interest is safety. No scientific testimony, however, was taken during the legislative session regarding this method. There does not appear to be any scientific method in forming this safe area around the condemned. The effect however is to deny or at least severely inhibit Plaintiff his ability to touch his parishioner and pray with him.

27. The reason for this restriction is the possibility for nitrogen to escape during the execution in a closed, confined space. Defendants have developed an arbitrary, unscientific "safe area" of three feet.

28. Gas does not abide by "safe areas." Gas will assume the entire space of this locked, confined chamber. If Plaintiff is in the chamber, he could inhale

nitrogen if it escapes. This so called "safe area" denies Plaintiff his First Amendment right to minister to his parishioner during the most stressful time of his life, his death.

29. In developing this protocol, it is the opinion of Plaintiff, Defendants guessed at what the safe area would be around the condemned and have no scientific basis for this. If nitrogen escapes, there is no safe area in the closed, windowless, exhaustless room. It is a catastrophe waiting to happen.

30. Plaintiff would argue that he should be allowed to touch his parishioner during the execution. He also argues that because this is his right as well as the condemned to practice their religion, it is incumbent on the Defendants to provide a safe environment in which to practice his religion. There are methods that could ensure the safety of Plaintiff and allow him to touch the condemned. Defendants have not done so, and Plaintiff's right to exercise his religion is violated.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Honorable Court provide relief as follows:

1. A declaratory judgment that the Defendants' action to preclude or inhibit Plaintiff from having contact with Mr. Smith's body in the execution chamber violates Plaintiff's First Amendment rights.

2. A declaratory judgment that the Defendants' action to preclude or inhibit Dr. Hood from having contact with Mr. Smith in the execution chamber violates Dr. Hood's First Amendment rights under the Free Exercise Clause.

3. A preliminary injunction prohibiting Defendants from executing Mr. Smith until they can do so in a way that does not violate Dr. Hood's rights; and

4. A preliminary injunction prohibiting Defendants from executing Mr. Smith until they allow Dr. Hood to have contact with him during the execution and can provide for his safety during the execution.

Respectfully submitted,

s/ Eric Allen

Eric J. Allen (0073384)*
The Law Office of Eric J Allen
4200 Regent, Suite 200
Columbus, Ohio 43219
Ph : 614-443-4840
Fax : 614-573-2924
Email: eric@eallenlaw.com

s/ Gregory W. Gardner
Gregory W. Gardner**
P.O. Box 2366
Boulder, Colorado 80306
Ph: (202) 553-1561
Em: gardnerlegal@gmail.com


*Counsel of Record
**Application for Admission
Forthcoming
